

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-1999

# Asquith v. Dept of Corr

Precedential or Non-Precedential:

Docket 98-5211

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Asquith v. Dept of Corr" (1999). *1999 Decisions.* Paper 221.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/221

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5211

WILLIAM EUGENE ASQUITH

v.

DEPARTMENT OF CORRECTIONS;
VOLUNTEERS OF AMERICA; WILLIAM H.
FAUVER, COMMISSIONER, DEPARTMENT
OF CORRECTIONS; DOROTHY KELLER,
ADMINISTRATOR, COMMUNITY RELEASE
COORDINATOR; KEN SAFCO, DIRECTOR,
VOLUNTEERS OF AMERICA; ROBERT GREGORY,
CASE MANAGER, VOLUNTEERS OF AMERICA;
CHRIS ARRAYO, CASE AIDE, VOLUNTEERS OF
AMERICA; EDWARD McNAIR, CASE AIDE,
VOLUNTEERS OF AMERICA,

   William Asquith,
    Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 95-cv-00300)
District Judge: Joseph E. Irenas

Argued June 2, 1999

Before: SCIRICA, McKEE, Circuit Judges, and
SCHWARZER,* District Judge

(Filed July 30, 1999)

_____

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

STEPHEN M. LATIMER, ESQUIRE
  (ARGUED)
Loughlin & Latimer
131 Main Street, Suite 235
Hackensack, NJ 07601

Attorneys for William Eugene
Asquith, Appellant.

RONALD L. BOLLHEIMER, ESQUIRE
  (ARGUED)
Office of the Attorney General of
 New Jersey
Department of Law & Public Safety
CN112 Division of Criminal Justice
Richard J. Hughes Justice Complex
Trenton, NJ 08625

Attorney for William H. Fauver,
Commissioner, Department of
Corrections; Dorothy Keller,
Administrator, Community Release
Coordinator, Appellees

JOSEPH M. ASSAN, ESQUIRE
Law Offices of Thomas Dempster, III
161 Gaither Drive
Centerpointe at East Gate
Suite 201
Mount Laurel, NJ 08054

Attorneys for Volunteers of America;
Ken Safco, Director, Volunteers of
America, Appellees

OPINION OF THE COURT

SCHWARZER, District Judge.

In this appeal, we must decide whether William Asquith, a former New Jersey State inmate, had a protected liberty interest in remaining in New Jersey's Residential Community Release Agreement Program. We find he did not and, accordingly, affirm the district court.

FACTS

William Asquith was serving a five-year sentence under the custody of the New Jersey Department of Corrections ("DOC") when he entered New Jersey's Residential Community Release Agreement Program. Under that program, Asquith lived in a halfway house run by Volunteers of America ("VOA") and worked nearby as a maintenance mechanic. After several months without any significant incident, a VOA case aide reported that Asquith returned to the halfway house smelling of alcohol and that he failed a Breathalyzer test. Under New Jersey's regulations, "imbibing in alcoholic beverages" is a "major violation" and results in the "immediate transfer of the inmate to a correctional facility within the New Jersey Department of Corrections." N.J.A.C. 10A:20-4.21. As a result, Asquith was immediately removed from the halfway house and returned to prison. At a subsequent hearing to determine whether Asquith had committed the major violation, he was found not guilty. Asquith was not, however, returned to the halfway house, and the DOC provided no hearing to determine whether he should be returned.

PROCEDURAL HISTORY

Asquith filed a complaint under 42 U.S.C. S 1983 (1994) alleging he was denied due process of law when the DOC failed to return him to the halfway house withoutfirst providing a hearing. The district court dismissed his complaint as frivolous. On appeal, this court vacated the order of dismissal and remanded the case for "development of a record as to the existence of a liberty interest under the due process clause itself," noting that the district court did not have the benefit of the Supreme Court's recent decision in Sandin v. Conner, 515 U.S. 472 (1995). On remand, the district court granted defendants' motion for summary judgment holding that Asquith had no liberty interest under the Due Process Clause itself or under New Jersey State law. See Asquith v. Volunteers of America, 1 F. Supp. 2d 405, 413, 417-18 (D.N.J. 1998). Asquith now appeals.

3

The district court had subject matter jurisdiction under 28 U.S.C. S 1343 (1994). We have appellate jurisdiction pursuant to 28 U.S.C. S 1291 (1994).

DISCUSSION

A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state. See Hewitt v. Helms, 459 U.S. 460, 466 (1983). The district court determined that Asquith had no protected liberty interest under the Due Process Clause because, while in the halfway house, Asquith lived a life "of incarceration, strict limitation and certain sharply conscribed privileges," and under the Due Process Clause "prisoners under confinement do not have inherent liberty interests in particular modes, places or features of confinement or custody." Asquith, 1 F. Supp. 2d at 410, 412. The district court also held that under Sandin v. Conner, the state had not deprived Asquith of a liberty interest because returning Asquith to prison was not an "atypical" or "significant" hardship warranting due process protection. See Asquith, 1 F. Supp. 2d at 417-18. We review the district court's grant of summary judgment de novo, see Pennsylvania Coal Ass'n v. Babbit, 63 F.3d 231, 236 (3d Cir. 1995), and affirm.

I. LIBERTY INTEREST UNDER THE DUE PROCESS CLAUSE

The Supreme Court has consistently held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Hewitt, 459 U.S. at 468 (alteration in original) (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)). Thus, a prisoner does not have a liberty interest in remaining in a preferred facility within a state's prison system. See Montanye, 427 U.S. at 242; Meachum v. Fano, 427 U.S. 215, 224-25 (1976). In Meachum the Court explained that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its

4

prison system . . . . The Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison." Meachum, 427 U.S. at 224.

On the other hand, the Court has found protected liberty interests after an inmate is released from institutional confinement. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Court recognized a parolee's liberty interest in remaining conditionally free on parole: "[H]e can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. . . . [H]is condition is very different from that of confinement in a prison." Id. at 482. Relying on Morrissey, the Court in Young v. Harper, 520 U.S. 143 (1997), held that an inmate enrolled in Oklahoma's pre-parole program also had a protected liberty interest entitling him to due process before he could be removed from the program. There the pre-parolee "was released from prison before the expiration of his sentence. He kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment." Id. at 148. While the Supreme Court recognized that the pre-parolee's freedoms were limited--"[h]e was not permitted to use alcohol, to incur other than educational debt, or to travel outside the county without permission"--the limitations were equivalent to those of the parolee in Morrissey, and thus, did not "render such liberty beyond procedural protection." Id.

Asquith argues that New Jersey's community release program affords a degree of liberty substantially similar to the liberty protected in Young and that the district court improperly "focused its attention on the restrictions imposed on community release participants and ignored the degree of liberty to which plaintiff was entitled while he was in community release status." We recognize that Asquith's liberty was significantly greater while he lived in the halfway house than it was while in prison. In addition to leaving the halfway house for work, Asquith could obtain passes to visit family, shop, eat at restaurants, or go to the local YMCA. Such liberties are similar to those of the pre-parolee in Young.

5

Unlike the pre-parolee in Young, however, Asquith never left institutional confinement. In Young the pre-parolee lived in his own home. See id. Asquith lived in a strictly monitored halfway house. While at the facility, he was subject to a curfew and had to "stand count" several times a day. He was also required to submit to urine monitoring and his room could be searched. Asquith could leave the house, but had to sign in and out, and his weekend passes were limited to two nights every seven days. VOA would monitor the time it took Asquith to travel to and from the halfway house, and he was required to take public transportation. While away, he was also required to check in by phone several times each day. If he could not be contacted within two hours, he would be deemed an escapee.

These restrictions are dispositive because they amount to institutional confinement. Cf. Brennan v. Cunningham, 813 F.2d 1, 5-6 (1st Cir. 1987) (holding that a prisoner in a halfway house "remains under confinement in a correctional institution"). The Supreme Court has consistently held that while a prisoner remains in institutional confinement, the Due Process Clause does not protect his interest in remaining in a particular facility. See Montanye, 427 U.S. at 242 ("[T]he Due Process Clause by its own force [does not] require[ ] hearings whenever prison authorities transfer a prisoner to another institution . . . [a]s long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him . . . ."); Meachum, 427 U.S. at 224-25 ("Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another . . . ."). Thus, Asquith's removal from the halfway house did not trigger the protections of the Due Process Clause.

While the fact that Asquith remained in institutional confinement is dispositive, we note that New Jersey's community release program is unlike parole in another way. In Morrissey, the Supreme Court explained that one incident of the parolee's liberty is the "the implicit promise that parole will be revoked only if the he fails to live up to the parole conditions." Morrissey, 408 U.S. at 482 & n.8;

6

see also Young, 520 U.S. at 150-51 (emphasizing the lack of evidence on the record showing that the pre-parolee's continued participation was contingent upon extrinsic events). Here, there was no implicit promise that Asquith's limited freedoms might not be arbitrarily revoked. The program agreement which Asquith signed provided that return to a correctional facility would terminate his participation, and New Jersey's regulations required that if a program member was merely charged with a major violation, he would be returned to a correctional facility. See N.J.A.C. 10A:20-4.21. Moreover, the Commissioner is authorized "at any time [to] transfer an inmate from one place of confinement to another." See N.J.A.C. 10A:20-4.2. Thus, Asquith's continued participation was dependent upon extrinsic events, and he could have no expectation that he would remain in the program once charged with a major violation.

## II. STATE-CREATED LIBERTY INTEREST

The Due Process Clause also protects liberty interests created by the laws or regulations of a state. See Sandin, 515 U.S. at 483. Asquith argues that under Sandin, the "polestar for identifying state-created liberty interests is the `nature of the deprivation' " and that the district court erred by failing to recognize that his life while in the community release program was "fundamentally different from incarceration behind the walls" of prison.

In Sandin, the Supreme Court established a new framework for determining whether a prisoner has been deprived of a state- created liberty interest. It held that a prisoner is deprived of a state-created liberty interest only if the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Even if Asquith's life in prison was "fundamentally different" from life at the halfway house, Sandin does not permit us to compare the prisoner's own life before and after the alleged deprivation. Rather, we must compare the prisoner's liberties after the alleged deprivation with the normal incidents of prison life. See Sandin, 515 U.S. at 485-86. "[T]he baseline for determining what is `atypical

7

and significant'--the `ordinary incidents of prison life'--is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Griffin v. Vaughn, 112 F.3d 703, 706 & n.2 (3d Cir. 1997); see also Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996) (removing an inmate from a work release program and returning him to prison did not deprive the inmate of a liberty interest under Sandin because prison was "not atypical of what inmates have to endure in daily prison life"); Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir. 1996) (same). Since an inmate is normally incarcerated in prison, Asquith's return to prison did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest.

CONCLUSION

Because Asquith did not have a protected liberty interest in remaining in the halfway house, either under the Due Process Clause or under state law, the district court properly granted summary judgment and dismissed Asquith's claim for deprivation of due process.

AFFIRM.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

8