**Russell E. FOLK, Petitioner,**

v.

**ATTORNEY GENERAL OF THE COMMONWEALTH OF PA; George Patrick, Superintendent, Respondents.**

No. CIV.A. 03–222J.

United States District Court, W.D. Pennsylvania.

March 27, 2006.

Russell E. Folk, Houtzdale, PA, Pro se.

Mary Lynch Friedline, Office of the Attorney General, Susan J. Forney, Office of Attorney General, Pittsburgh, PA, for Respondents.

## *ORDER*

GIBSON, District Judge.

The above captioned case was initiated by the filing of a Petition and a Motion to Proceed In Forma Pauperis on October 6, 2003, and was referred to United States Magistrate Judge Ila Jeanne Sensenich for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates. The case was transferred to Magistrate Judge Lisa Pupo Lenihan on April 6, 2004.

The magistrate judge's Report and Recommendation (Doc. No. 25), filed on October 24, 2005, recommended that the habeas petition filed pursuant to 28 U.S.C. Section 2254 be dismissed. It was also recommended that a certificate of appealability be denied. The report and recommendation was served on the Petitioner at SCI Houtzdale, P.O. Box 1000, Houtzdale, PA 16698–1000, and on counsel for the Respondents. The parties were advised they were allowed ten (10) days from the date of service to file written objections to the report and recommendation. No objections have been filed. After review of the pleadings and documents in the case, together with the report and recommendation, the following order is entered:

**AND NOW**, this 27th day of March, 2006;

**IT IS HEREBY ORDERED** that the habeas petition filed pursuant to 28 U.S.C. Section 2254 is **DISMISSED**.

**IT IS HEREBY ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. No. 25) of Magistrate Judge Lenihan, dated October 24, 2005, is adopted as the opinion of the court.

## *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

LENIHAN, United States Magistrate Judge.

## *RECOMMENDATION*

It is respectfully recommended that the petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 be dismissed. It is also recommended that a certificate of appealability be denied.

## *REPORT*

Russell E. Folk, (Petitioner) seeks habeas relief. Because Petitioner has failed to show that the Pennsylvania Parole Board's consideration, in its parole determinations, of whether he accepted responsibility for the crimes of which he was convicted and/or its consideration of whether he successfully completed rehabilitation programs, which required him to admit guilt, violated any of his federal rights, the Section 2254 petition should be dismissed.

### A. Relevant Facts and Procedural History

Petitioner's habeas petition is not a model of clarity. Petitioner was convicted in Berks County of various sexual offenses committed against his seven year old grandson and is serving an aggregate sentence of 6–30 years. Petitioner was denied parole on August 15, 2003. Petitioner complains that the parole board and parole system in Pennsylvania violate the United States Constitution because there is no provision for parole in the Pennsylvania Constitution of 1968 or of the Pennsylvania Constitution of 1873. Second, Petitioner complains that the Board's consideration of his participation or lack thereof in rehabilitative programs which require that he

admit his guilt violates his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights.

## B. Applicable Legal Principles

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, tit. I, § 101 (1996) (AEDPA) which amended the standards for granting state prisoners federal habeas relief for petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because petitioner's habeas petition was filed in the year 2003, AEDPA is applicable to this case. *Werts v. Vaughn,* 228 F.3d 178, 195 (3d Cir.2000).

Generally, a federal habeas petitioner is required to have exhausted his state remedies before filing his habeas petition. 28 U.S.C. § 2254(b) & (c). However, a court need not address the exhaustion requirement if it can dismiss the habeas petition on other grounds. *See, e.g.,* 28 U.S.C. § 2254(b)(2).

■■■ A state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2254(a). *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *Geschwendt v. Ryan,* 967 F.2d 877 (3d Cir. 1992). Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before habeas relief may be granted. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wells v. Petsock,* 941 F.2d 253 (3d Cir.1991). A federal court's scope of review is limited as it does not sit to retry state cases *de novo* but examines the proceedings in the state tribunal to determine if there has been a violation of federal constitutional standards. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), *superceded by statute on other grounds as recognized in, Rickman v. Bell,* 131 F.3d 1150, 1165 (6th Cir.1997); *Milton v. Wain-*

*wright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

## C. Discussion

The most recent Board order denying Petitioner parole, a copy of which was provided by the Petitioner as an attachment to his habeas petition, indicates that the Board denied Petitioner parole on August 15, 2003. In that denial, the Board cited, inter alia, the following reasons for denying him parole: "YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSES COMMITTED. THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.... YOUR UNACCEPTABLE COMPLIANCE WITH PRESCRIBED INSTITUTIONAL PROGRAMS." Doc. 3, Ex B–1.

### (1) The Fifth Amendment is not Violated

The first issue Petitioner raises is that the Board and the Department of Corrections ("DOC") violate his Fifth Amendment rights against self incrimination when, based on his refusal to admit guilt to sexual crimes as apparently required by the rehabilitation programs, DOC denies him a recommendation for parole. The Board denies him parole based partially upon these refusals as well as his failure to complete the rehabilitation programs and failure to obtain the DOC's recommendation.

Petitioner's Fifth Amendment claim fails for at least two reasons: 1) the Fifth Amendment right is not violated until compelled statements are used against a person in a criminal case and parole proceedings do not constitute a criminal case, and 2) the statements required to be made by Petitioner in order to participate in the rehabilitation programs are not "com-

pelled" within the meaning of the Fifth Amendment.

▇▇▇ The Fifth Amendment right is not violated until compelled statements are used against a person in a criminal case. *Chavez v. Martinez,* 538 U.S. 760, 766–68, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (plurality). The Fifth Amendment provides in relevant part that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself[.]" As explained recently by a plurality of the Supreme Court, the Fifth Amendment right against being compelled to be a witness against oneself in a criminal trial (as opposed to the "right" to various prophylactic rules set forth by the court in aid of the Fifth Amendment right) is a trial right and is not violated unless and until the compelled statements are utilized in a criminal case. As explained by the Court:

> Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self–Incrimination Clause occurs, *see United States v. Verdugo–Urquidez,* 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). . . .
>
> .   .   .   .   .   .
>
> Here, Martinez was never made to be a "witness" against himself in violation of the Fifth Amendment's Self–Incrimination Clause because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to " 'the cruel trilemma of self-accusation, perjury or contempt.' "
>
> .   .   .   .   .
>
> Our holdings in these cases demonstrate that, contrary to the Ninth Circuit's view, mere coercion does not violate the text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case against the witness.

*Chavez v. Martinez,* 538 U.S. 760, 766–68, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)(some citations omitted). The requirements of both the DOC and the Parole Board which demand that Petitioner admit to the sexual crimes he was convicted of, do not constitute compulsion under the Fifth Amendment, because Petitioner, like Martinez, was "never made to be a 'witness' against himself in violation of the Fifth Amendment's Self–Incrimination Clause. . . ." His statements were never admitted as testimony against him in a criminal case, therefore, Petitioner fails to establish that his Fifth Amendment rights were violated. *Martinez,* 538 U.S. at 767, 123 S.Ct. 1994.

As a plurality opinion, *Martinez* is not binding authority for this proposition. However, in this Circuit the issue is settled by the binding authority of *Renda v. King,* 347 F.3d 550, 559 (3d Cir.2003). In *Renda,* the Court held that

> our prior decision in *Giuffre* [*v. Bissell,* 31 F.3d 1241 (3d Cir.1994) ] compels the conclusion that **it is the use of coerced statements during a criminal trial,** and not in obtaining an indictment, that violates the Constitution. *See* 31 F.3d at 1256. In *Giuffre,* as in the present case, the police used statements allegedly obtained from a custodial interrogation where the plaintiff was not properly warned of his Miranda rights as a basis for filing criminal charges, but those charges were later dropped. *See id.* at 1250–51. Under these circumstances, we held that Giuffre's constitutional right against self-incrimination was not violated. See *id.* at 1256. The same conclusion applies here.

*Id.* at 559 (emphasis added).

There can be no dispute that Department of Corrections rehabilitation programs and Parole Board proceedings do not constitute a "criminal case" within the

meaning of the Fifth Amendment or a "criminal trial" within the meaning of *Martinez* and *Renda* and their progeny. *See Minnesota v. Murphy*, 465 U.S. 420, 435 n. 7, 104 S.Ct. 1136, 79 L.Ed.2d 409, (1984)("Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding."); *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)("Probation revocation, like parole revocation, is not a stage of a criminal prosecution"); *In re Subpoena of Heimerle*, 788 F.Supp. 700, (E.D.N.Y.1992) ("If, as the Supreme Court has recently suggested, parole and probation proceedings are not 'criminal' cases subject to the fifth amendment limitation, then Heimerle's motion to quash is entirely unsupported by governing law.")(footnote omitted). *Cf. United States v. Smith*, 839 F.2d 175, 178 (3d Cir.1988)("The proceeding before the district court on the motion to reduce sentence was not one to impose a criminal penalty, but to relieve him from one. The failure to reduce a sentence is not equivalent to the imposition of a criminal penalty; if there can be no criminal penalty, there can be no incrimination.").

■ Assuming *arguendo* that the Fifth Amendment can be violated even outside of the criminal trial context, there is another problem with Petitioner's Fifth Amendment claim. It is well settled that "[t]he [Fifth Amendment] privilege has two components: incrimination and compulsion." *Lile v. McKune*, 224 F.3d 1175, 1179 (10th Cir.2000) (*McKune I* ), *cert. granted*, 532 U.S. 1018, 121 S.Ct. 1955, 149 L.Ed.2d 752 (2001), *and rev'd on other grounds, McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). Petitioner has failed to establish that he has suffered

compulsion within the meaning of Fifth Amendment jurisprudence, the second necessary component of a Fifth Amendment claim. In this regard, the court finds persuasive the reasoning of *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (plurality opinion)("*McKune II* ").

*McKune II* involved a program wherein convicted sex offender prisoners were ordered to participate in a treatment program which required that they not only sign a form in which the prisoners must "accept responsibility for the crime for which they have been sentenced [but also must] complete a sexual history form, which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses." *Id.* at 30, 122 S.Ct. 2017. Failure to comply with the mandatory disclosure resulted automatically in a decrease in the prisoner's privilege status from Level III to Level I, reducing the prisoner's visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to a personal television, etc. In the case of the particular prisoner at issue in *McKune*, the prisoner was going to be transferred from minimum security unit to a maximum security unit, involving a move from a two person cell to a four person cell, which resulted in placing him in a potentially more dangerous environment. *Id.* at 30–31, 122 S.Ct. 2017. Moreover, there was no guarantee that the mandatory disclosures would not be used against a prisoner as for instance in initiating new criminal charges against him. *Id.* The prisoner in *McKune* refused to comply with the program, claiming that to do so would violate his Fifth Amendment right against compulsory self incrimination.

A plurality of the Supreme Court rejected the claim. In doing so, the plurality

reasoned that it must determine whether the consequences a prisoner suffers as a result of refusing to comply with the disclosures constitutes compulsion. *McKune II*, 536 U.S. at 41, 122 S.Ct. 2017. In conducting this analysis, the plurality noted that in other cases, even more severe consequences for refusing to disclose were held not to constitute compulsion for Fifth Amendment purposes. The plurality observed that

> In *Murphy*, the defendant feared the possibility of additional jail time as a result of his decision to remain silent. The defendant's probation officer knew the defendant had committed a rape and murder unrelated to his probation. One of the terms of the defendant's probation required him to be truthful with the probation officer in all matters. Seizing upon this, the officer interviewed the defendant about the rape and murder, and the defendant admitted his guilt. The Court found no Fifth Amendment violation, despite the defendant's fear of being returned to prison for 16 months if he remained silent. 465 U.S. at 422, 438, 104 S.Ct. 1136.

> In *Ohio Adult Parole Authority* v. *Woodard*, the plaintiff faced not loss of a personal television and gym access, but loss of life. In a unanimous opinion just four Terms ago, this Court held that a death row inmate could be made to choose between incriminating himself at his clemency interview and having adverse inferences drawn from his silence. The Court reasoned that it "is difficult to see how a voluntary interview could 'compel' respondent to speak. He merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of which has ever been held to violate the Fifth Amendment." 523 U.S. at 286, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). As here, the inmate in Woodard claimed to face a

Hobson's choice: He would damage his case for clemency no matter whether he spoke and incriminated himself, or remained silent and the clemency board construed that silence against him. Unlike here, the Court nevertheless concluded that the pressure the inmate felt to speak to improve his chances of clemency did not constitute unconstitutional compulsion.

*McKune II,* 536 U.S. at 43, 122 S.Ct. 2017. The plurality concluded that the consequences at issue in *Murphy* and *Woodard,* which were held to not constitute compulsion, were much greater than the consequences to the prisoner in *McKune I* and thus, the comparatively less onerous consequences in *McKune II* "did not amount to unconstitutional compulsion." *Id.* This court finds the reasoning of the plurality in *McKune II* to be persuasive herein. If the fear of being returned to prison to serve out 16 months if the prisoner remained silent (*Murphy* ), does not amount to compulsion, it is difficult to see the allegations herein amount to compulsion. In *Murphy* the prisoner was in jeopardy of losing his status of being outside the prison wall, in contrast, Petitioner is simply being maintained in the status quo. This reasoning applies all the more forcibly to a comparison of *Woodard,* where silence by the prisoner risked loss of a chance for clemency with the consequence of having the death sentence carried out, whereas in contrast here, silence by Petitioner herein, at most, resulted in a decreased chance at parole this time with the severest consequence being he would continue to serve out his sentence until and unless paroled in the future.

Even if the Board's requirement that Petitioner admit his sexual misdeeds amounts to incrimination, it does not amount to the **compulsory** incrimination within the meaning of *McKune* and barred by the Fifth Amendment. The conse-

quences Petitioner faces herein if he fails to admit to sexual misdeeds are, at most, for DOC to deny him its recommendation and for the Board to consider his failure as being one reason to weigh against the grant of parole. Petitioner does not contend, and the record does not reveal, that Petitioner's failure to accept responsibility for his sexual behavior would automatically preclude him from parole. Indeed, the record here reveals that, in its most recent denial of parole, the Board considered among other things, "REPORTS, EVALUATIONS, AND ASSESSMENTS CONCERNING YOUR PHYSICAL, MENTAL AND BEHAVIOR CONDITION AND HISTORY." Doc. 3, Ex. B–1.

Taking the foregoing into consideration, Petitioner simply has not met his burden to show that the Board's requiring that he admit to his sexual misdeeds, violates his Fifth Amendment right against **compulsory** incrimination. *See also, Thorpe v. Grillo,* 80 Fed.Appx. 215 (3d Cir.2003).

### (2) Fourteenth Amendment's Due Process Clause

Petitioner claims that requiring him to admit to the sex crimes violates his Fourteenth Amendment due process rights. It is not clear whether Petitioner is making a procedural due process claim or a substantive due process claim. In either case, he fails to establish a violation.

### (a) Procedural Due Process

To the extent that Petitioner is making a procedural due process claim, it must necessarily fail. Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty interest within the contemplation of the Due Process Clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. *Shoats v. Horn,* 213 F.3d 140, 143

(3d Cir.2000). A liberty interest can arise in one of two ways: 1) it can be derived directly from the Due Process clause of the Federal Constitution or 2) it can arise from the state's statutory scheme. *Asquith v. Department of Corrections,* 186 F.3d 407, 408 (3d Cir.1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state.").

▪ It is well settled law that the Due Process Clause of the Federal Constitution does not of its own force create a liberty interest in parole. *Board of Pardons v. Allen,* 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (stating that, "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and distinguishing parole revocation which implicates a liberty interest, from parole release decisions which do not). Accordingly, if Petitioner is to assert a viable claim of procedural due process, he must show that the law of Pennsylvania has created a liberty interest in parole.

▪ It is well established that Pennsylvania State law creates no liberty interest in parole. *See, e.g., U.S. ex rel. Schiano v. Luther,* 954 F.2d 910, 916 (3d Cir.1992); *Henry v. Bello,* No. 92–4341, 1994 WL 27320, *1 (E.D.Pa. Feb. 1, 1994)("However, the Pennsylvania Probation and Parole Act gives the parole board considerable discretion to decide whether to grant parole, 61 P.S. § 331.21; therefore, the Commonwealth has not created a liberty interest in parole."); *McCrery v. Mark,* 823 F.Supp. 288, 293–94 (E.D.Pa.1993) ("the Pennsylvania Probation and Parole Act [cite][sic] cannot be said to create an expectation of

parole").[1]  Because there is no liberty interest in parole, no matter what procedures or lack thereof, the Respondents utilize and no matter what conditions or requirements the Defendants impose, such do not violate procedural due process because such procedures and/or conditions merely deprive him of parole, in which he possesses no liberty interest.

### (b) Substantive due process

■ To the extent Petitioner is raising a substantive due process claim, it fails. Substantive due process "is an area of the law famous for its controversy, and not known for its simplicity." *Woodwind Estates Ltd. v. Gretkowski*, 205 F.3d 118, 122 (3d Cir.2000), *abrogation on other grounds recognized in, United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392 (3d Cir.2003). In contrast to procedural due process' focus on procedures, substantive due process prohibits certain government actions irrespective of the procedures which attend those actions.

*Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir.2000) ("The substantive component of the Due Process Clause limits what governments may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities.").  Whereas procedural due process concerns deprivations of liberty interests and assures that such deprivations are not accomplished unless attended by certain procedures, substantive due process does not require a liberty interest in order to be violated.  *Block v. Potter*, 631 F.2d 233, 236 (3d Cir.1980)(holding that denial of parole based on considerations of race may state a claim for violation of substantive due process even though there is no liberty interest in parole);[2]  *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir.1991)(under one theory of substantive due process "it is not required that the plaintiffs prove a violation of a specific liberty or property interest") (citing, *Ro-*

1. It may well be that the way of analyzing the question of whether Pennsylvania has created a liberty interest in parole has changed since the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), but the answer remains the same after *Sandin* as before *Sandin*—Pennsylvania has not created a liberty interest in parole. *See, e.g., Rauso v. Vaughn*, No. 96–6977, 2000 WL 873285, at *7 n. 15 (E.D.Pa. June 26, 2000); *Gregg v. Smith*, No. 97–4894, 1998 WL 309860, at *2 (E.D.Pa. June 10, 1998)("plaintiff has no protected liberty interest in receiving parole which is discretionary in Pennsylvania...."); *McFadden v. Lehman*, 968 F.Supp. 1001, 1004 (M.D.Pa. 1997) ("Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs."); *Nelson v. Miranda*, No. 96–CV2854, 1997 WL 327381 at *5 (E.D.Pa. May .6, 1997) ("Applying the *Sandin* methodology to the case at hand, we find that Pennsylvania law has not created a protectible liberty interest in parole hearing."); *Nieves v. Dragovich*, No. Civ. A. 96–6525, 1997 WL 698490, at *4

(E.D.Pa. Nov. 3, 1997)("Although a prisoner is entitled to protection from certain restraints 'exceeding the sentence in ... an unexpected manner,' *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418(1995), denial of the aforementioned privileges [including parole] cannot lead to a punishment unexpectedly exceeding the original sentence."), *aff'd*, 175 F.3d 1011 (1999)(Table); *Rodgers v. Parole Agent*, 916 F.Supp. 474, 477 (E.D.Pa.1996) ("Thus, under Pennsylvania law, the granting of parole is not a constitutionally protected liberty interest.")

2. This court acknowledges that even though "the vitality of *Block* is questionable, it must be followed until overturned. *See Jubilee v. Horn*, No. 97–1755, slip op. at 1 (3d Cir. Mar.26, 1998) (unpublished per curiam decision) ('[N]ot only do courts of appeals in other circuits disagree with *Block*, but more recent decisions by this Court suggest that *Block* may be obsolete.')." *Rauso v. Vaughn*, No. Civ. 98–6312, 1999 WL 111474, *1 (E.D.Pa. March 2, 1999).

*chin v. California,* 342 U.S. 165 at 172, 173, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

■ The standards for analyzing a substantive due process claim appear to depend upon whether one is challenging legislative or executive action. *See, e.g., Wagner ex rel. Wagner–Garay v. Fort Wayne Community Schools,* 255 F.Supp.2d 915, 922 (N.D.Ind.2003) ("However, the appropriate standard for analyzing a substantive due process claim depends on whether 'legislation or a specific act of a governmental officer is at issue.'") (quoting, *Dunn v. Fairfield Community High School Dist. # 225,* 158 F.3d 962, 965 (7th Cir.1998)). The parole board is an executive branch agency. *See Apprendi v. New Jersey,* 530 U.S. 466, 549, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)(describing parole board officials as executive branch officials). The standard of review for a substantive due process challenge to executive branch action requires that the aggrieved person establish that the executive action shocks the court's conscience. *See, e.g., Hunterson v. DiSabato,* 308 F.3d 236, 247 n. 10 (3d Cir.2002) (wherein the Court of Appeals observed that "we have frequently employed the 'shocks the conscience' standard when considering a claim that an executive action amounted to a substantive due process violation."); *Hawkins v. Freeman,* 195 F.3d 732 (4th Cir.1999)(applying shock the conscience standard to an alleged error in the parole process); *Benson v. Martin,* 8 Fed.Appx. 927, 930 (10th Cir.2001) (explaining it is a habeas petitioner's burden to establish that the challenged action shocks the conscience).

Admittedly, the "shock the conscience" test is less than precise. However, in giving content to this test, the Supreme Court has explained that conduct that is "most likely to rise to the conscience-shocking level is 'conduct intended to injure in some way unjustifiable by any government interest.'" *Martinez,* 538 U.S. at 775, 123 S.Ct. 1994 (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

■ Petitioner fails to show that requiring him to successfully complete a sex offenders treatment program or other rehabilitation programs that require Petitioner to admit guilt is conscience shocking or that such a requirement constitutes behavior that is intended to injure Petitioner in a way that is unjustifiable by any government interest.

■ Progress by the parole applicant in the process of rehabilitation is a legitimate consideration for the Board. *See McGinnis v. Royster,* 410 U.S. 263, 277, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973)(it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to evaluate both an inmate's conduct and his **rehabilitative progress** before he is eligible for parole")(emphasis added). It is generally acknowledged that an integral part of making progress in rehabilitation is acceptance of responsibility for one's crimes both charged and uncharged and it is at least not irrational to believe that acceptance of responsibility is an important step on the road to rehabilitation, a legitimate penological goal. *See, e.g., McKune II,* 536 U.S. at 32—35, 122 S.Ct. 2017.[3] Indeed, as recently declared

---

**3.** An important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct. *Id.,* at 73. "Denial is generally regarded as a main impediment to successful therapy," and "[t]herapists depend on offenders' truthful descriptions of events leading to past offences in order to determine which behaviors need to be targeted in therapy." H. Barbaree, Denial and Minimization Among Sex Offenders: Assessment and Treatment Outcome, 3 Forum on Corrections Research, No. 4, p. 30 (1991). 536 U.S. at 33, 122 S.Ct. 2017.

in *McKune II*, "[a]cceptance of responsibility is the beginning of rehabilitation." *Id.* at 47, 122 S.Ct. 2017. Hence, it is wholly legitimate for the Board to consider whether Petitioner acknowledges responsibility for his criminal behavior and so, such consideration is neither arbitrary nor capricious, or, in other words, does not shock this court's conscience. Accordingly, Petitioner has failed to carry his burden of showing that the Board's requirement that he admit his guilt for his past criminal behavior shocks this court's conscience or is arbitrary or capricious. Hence, he has failed to show a violation of his substantive due process rights.

### (3) The First, Fourth and Sixth Amendment claims

Petitioner also complains that the requirement to participate in, and successfully complete rehabilitation programs that require admission of guilt violates his First, Fourth and Sixth Amendment rights. However, Petitioner offers no argument with respect to these distinct provisions and so the court finds them to be waived. Alternatively, the court is not convinced that Petitioner has established any violation of those provisions.

▮▮▮▮ Reading the Petitioner's filings liberally, it appears that Petitioner is making a claim that he has a First Amendment right not to be compelled to speak words, such as admitting to having sexually violated his grandson and that the Parole Board's considering his failure to participate in programs that require he make such statements violates that First Amendment right. While the United States Supreme Court has recognized "that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all[,]" *Wooley v. Maynard,* 430 U.S. 705, 714, 97 S.Ct. 1428, 51 L.Ed.2d

752 (1977), it has also recognized that conviction of a crime carries with it the necessary curtailment of rights of a convict. The Supreme Court has declared that:

> In a prison context, an inmate does not retain those First Amendment rights that are "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Prisons, it is obvious, differ in numerous respects from free society. They, to begin with, are populated, involuntarily, by people who have been found to have violated one or more of the criminal laws established by society for its orderly governance. In seeking a "mutual accommodation between institutional needs and objectives (of prisons) and the provisions of the Constitution that are of general application," *Wolff v. McDonnell,* 418 U.S. at 556, 94 S.Ct. 2963, this Court has repeatedly recognized the need for major restrictions on a prisoner's rights. *See, e. g., id.,* 418 U.S. at 561–562, 94 S.Ct. 2963; *Lanza v. New York,* 370 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). These restrictions have applied as well where First Amendment values were implicated. *See, e. g., Pell v. Procunier, supra; Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

*Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129–30, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). In this case, Petitioner has not argued, yet alone convinced the court that the Parole Board's consideration of Petitioner's refusal to participate in rehabilitation programs that require him to make statements that implicate him, serves no legitimate penological goal and/or is not reasonably related to rehabilitation. As such, he has not shown that his First Amendment rights have

been violated. *See, e.g., Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The court is at a loss to see how the Fourth Amendment is applicable to the facts of this case, yet alone violated.

Neither does the Sixth Amendment provide any basis for relief. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (holding that the rights guaranteed by the sixth amendment in "criminal prosecutions" do not apply in a parole revocation proceeding, and declaring that "[p]arole arises after the end of the criminal prosecution" and so is not part of the criminal prosecution); *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)("the protections provided by the Sixth Amendment are available only in 'criminal prosecutions.'"); *United States v. Aspinall,* 389 F.3d 332, 342 (2d Cir.2004) (holding that the Sixth Amendment applies only to "criminal prosecutions" and "it has long been established that probation revocation, like parole revocation, is not a stage of a criminal prosecution") (internal quotations omitted), *abrogated on other grounds as recognized in, United States v. Fleming,*

397 F.3d 95, 99 n. 5 (2d Cir.2005); *Ganz v. Bensinger,* 480 F.2d 88, 89 (7th Cir.1973) (" 'Parole arises after the end of the criminal prosecution, including imposition of sentence.' A parole release hearing is not part of the criminal prosecution; the Sixth Amendment is inapplicable.") (footnote and some citations and omitted).

### (4) Parole System Does Not Violate Federal Constitution

Petitioner suggests that the entire parole system is unconstitutional. Petitioner apparently argues three points. First, that the Federal Constitution was violated by the authors of the Pennsylvania Constitution of 1968 (hence, the caption in this case) and apparently by the authors of all state constitutions after the initial one, i.e., after the Pennsylvania Constitution of 1776. He argues that it was the federal Continental Congress that gave authority to Pennsylvania to write the state constitution of 1776 and that the 1776 constitution "was and remained an indivisible and unrevokable [sic] part of the United States Constitution. Thus Pennsylvania could not have different 'constitutions' in 1790 and 1838 and 1873 nor in 1968—save, possibl[y], by an act of the Congress of the United States; but more probably so by an Amendment to the Constitution of the United States of America." Document entitled "Memorandum of Objection" stamped as received as of December 22, 2003, by the office of the magistrate judge formerly assigned to this case but never formally docketed.

■■■ Petitioner cites no authority for such a proposition [4] and it is legally with-

---

4. Petitioner does cite to "Article 4, § 3, cl. 1" which Petitioner says provides that "Congress (with Presidential 'Presentment') must pass an *Act* allowing the writing of a state constitution, before a state may convene a 'convention' to write and submit same for conformation [sic]. It is the exclusive province of the

United States Congress, per legislation to grant 'License or Leave' to write a constitution." Doc. 9 at 3. It is not clear to this court what "Article 4, § 3, cl. 1" refers to. The specific provision of the Federal Constitution at the article, section and clause cited by Petitioner has to deal with the admission of

out foundation. The federal constitution as it relates to state government provides only that the Federal Government shall guarantee a republican form of government to the states. U.S. Const. Art. IV, § 4. Petitioner has pointed to no power conferred on the federal government over when, how or where the states may establish, enact, amend, or abolish a state constitution as such, nor, as noted in *State of South Carolina v. U.S.*, 199 U.S. 437, 454, 26 S.Ct. 110, 50 L.Ed. 261 (1905), *overruled on other grounds*, is there any such power.

Petitioner next contends that the Pennsylvania Constitution makes has no provision for the creation of the parole system. Doc. 3 at 2 ("The Commonwealth (state) of Pennsylvania ... cannot enter into an agreement or **'contract'** or procedure or system or program dealing in **'Parole'** as there is no provision for **'Parole'** in the [sic] Pennsylvania Constitution of 1968. Nor was there any such thing as **'Parole'** in the Pennsylvania Constitution of 1873").[5] Petitioner implies that because the Pennsylvania Constitution does not explicitly authorize parole, Pennsylvania cannot have a parole system. While Petitioner may be correct that the Pennsylvania Constitution makes no explicit mention of parole, Petitioner is wrong as to the legal significance of such omission. Unlike the federal constitution which created a federal government with limited enumerated powers, state governments are governments which have any and all power that is not otherwise denied them. U.S. Const. Amend. X; *Hoffman v. Hunt*, 126 F.3d 575, 583–84 (4th Cir.1997)("A paramount component of their [i.e., the Founders] design was the establishment of a federal government of limited and enumerated powers and the recognition that state governments possess all remaining 'numerous and indefinite' powers.")(some quotations omitted); *American Coal Mining Co. v. Special Coal and Food Commission of Indiana*, 268 F. 563, 565 (D.Ind.1920)("it is elementary that our federal government is one of enumerated, specially defined powers, and powers essential to the execution of those specifically granted, and that ou[r] state governments are organized on the exact converse of that theory. The state has all the powers of an absolute, unrestrained sovereign, except so far as the state surrendered certain sovereign powers with which to constitute and create the federal government"). *See also Russ v. Commonwealth*, 210 Pa. 544, 60 A. 169, 172 (1905)("The [state] Constitution allows to

new states to the United States and says nothing about state constitutions.

5. In a somewhat related vein, Petitioner contends that Pennsylvania had no power to alter or amend its original constitution of 1776. Doc. 9 at p. 2. Petitioner cites to Section 9 of the 1776 State Constitution which addresses itself only to the "house of representatives" and declares that "**they** shall have no power to add to, alter, abolish, or infringe any part of this constitution." (emphasis added). However, contrary to Petitioner's intimations, this does not mean that the 1776 Constitution was required to exist in perpetuity without amendment. The 1776 Constitution itself contemplated its own change, amendment and/or abolition. *See, e.g.*, Section 47 created a Council of Censors who had the power to

call a convention to alter the 1776 constitution. Moreover Section V of the Declaration of Rights portion of the 1776 Constitution specifically provided that "the community hath an indubitable, unalienable and indefeasible right to reform, alter, or abolish government in such manner as shall be by that community judged most conducive to the public weal." Nor, contrary to Petitioner's contentions, was the 1776 State Constitution somehow engrafted into the Federal Constitution, which was not promulgated by the Federal Constitutional Convention until September 17, 1787 and did not come into effect until March 4, 1789, i.e., the first Wednesday of March, after the required number of states ratified it, when the first session of Congress took place. *See Owings v. Speed*, 5 Wheat. 420, 18 U.S. 420, 5 L.Ed. 124 (1820).

the Legislature every power which it does not positively prohibit.")(quoting, *Norris v. Clymer*, 2 Pa. 277, 285 (1845)); *Sharpless v. Mayor of Philadelphia*, 21 Pa. 147, 2 Am. Law Reg. 1, 1853 WL 6339, *14 (1853). ("the law then in question was valid, because there was no syllable in the [state] constitution to forbid it"). Hence, so long as the Pennsylvania Constitution does not prohibit the creation of a parole system, Pennsylvania may legally create a parole system. There is not one word in any of the Pennsylvania Constitutions, i.e., 1776, 1790, 1838 or 1968, prohibiting the creation of a system of parole. Hence, Petitioner's claim fails.

Moreover, even if Petitioner were successful in abolishing parole in Pennsylvania, it is not clear that such would benefit Petitioner. If parole is abolished, the Petitioner would have to serve his entire sentence, as it is well established that the maximum sentence in Pennsylvania is the true sentence and the minimum sentence is only the earliest time at which a convict may be considered for parole. *See, e.g., Bonilla v. Vaughn*, No. Civ. A. 97–7440, 1998 WL 480833 at * 7 (E.D.Pa.1998) ("[U]nder Pennsylvania law, the sentence imposed for a criminal offense is the maximum term.")(quoting *Krantz v. Pa. Bd. of Probation and Parole*, 86 Pa.Cmwlth. 38, 483 A.2d 1044, 1047 (1984)). The minimum sentence is merely a calculation of the earliest time when the inmate can become eligible for parole consideration. *Bonilla*, 1998 WL 480833 at *7 ("The minimum term merely sets the date prior to which a prisoner may not be paroled."). If there were no parole, Petitioner would lawfully be in custody until his maximum sentence expired.

As none of Petitioner's claims merit the grant of habeas relief, the petition should be dismissed.

**(5) Certificate of Appealability**

A certificate of appealability is required by 28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals. As amended by AEDPA, section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner herein has not made a "substantial showing" that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

## CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.