**Jeffrey Todd GARBER, Jr., Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS SECRETARY, Jeffrey Beard Phd., Pennsylvania Department of Corrections at S.C.I. Waymart, Superintendent Raymond Colleran, and any and all staff involved, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 6, 2004.

Decided June 7, 2004.

---

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

Jeffrey Todd Garber, petitioner, pro se.

Nicole L. Adams, Camp Hill, for respondents.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge LEAVITT.

The Department of Corrections (Department) has filed preliminary objections demurring to the petition for review filed *pro se* by Jeffrey Todd Garber (Garber) in this Court's original jurisdiction.[1] Garber has responded, and the matter is ready for disposition.

Garber is a convicted sex-offender currently incarcerated at the State Correctional Institution at Waymart (SCI–Waymart). The following parties are named as Respondents in the petition: Department of Corrections; Jeffrey A. Beard, Ph. D., Secretary of the Department; Raymond . Colleran, Superintendent at SCI–Waymart and "any and all staff involved." (collectively, Respondents). Petition at Caption. Garber challenges the constitutionality of Department of Corrections Policy DC–ADM 812, entitled "Inmate Visiting Privileges." Petition at ¶ 19. Specifically, Garber takes issue with the Department's policy of refusing to permit *contact* visits between convicted sex offenders and minor children.[2] Garber is permitted only non-contact visits with minors.[3]

Garber seeks this Court's intervention to force Respondents to provide contact visits between convicted sex offenders and minor children and to have the Department policy on this issue declared unconstitutional. He asserts that restricting sex offenders to non-contact visitations violates their First Amendment right to intimate family association because the safety of minors within the prison visitation setting may be assured by other means. Restricting visits with minors to non-contact visitation, Garber contends, is an "exaggerated response to prison concerns." Brief at 13. Garber also asserts that the Department has limited his visitation rights in retaliation for his refusal to participate in sex-offender treatment programs.[4] Finally,

---

1. Under this Court's Order of October 8, 2003, Garber was granted the ability to proceed *in forma pauperis,* and it was determined that the matter filed would be treated as a petition for review addressed to this Court's original jurisdiction. *See* 42 Pa.C.S. 761.

2. The Department policy provides:

   Any inmate who, as an adult or as a young adult offender, was ever convicted or adjudicated for a physical or sexual offense against a minor is prohibited from having a contact visit with any minor child. The Facility Manager may grant contact visits for inmates meeting this criteria for special circumstances (i.e. court orders, victim mediations, etc.).

   DC–ADM 812(VI)(C)(4).

3. Contact visits are defined as "visits in a setting in which the inmate and visitors are permitted limited physical contact and are not separated by security barriers or control systems." DC–ADM 812(IV)(C). Non-contact visits take place in an area where the visitor and the inmate are separated by a glass screen and conversations take place via telephone.

4. Garber asserts that he was discharged from a therapeutic program for sex-offenders in February of 2003 because he refused to abandon "core [religious] beliefs" of his that were violated by "certain program philosophies." Brief at 8. Garber later asserts that he had been designated by a professional in the treatment of sex-offenders as a "situational sex-

Garber contends that the Department does not stand *in loco parentis* and, therefore, the efforts of prison officials "to protect children against the wishes of their very own parents" "demonstrate[s] flawed logic, and even shows discrimination against some visitors." Brief at 18.

The Department filed preliminary objections, seeking dismissal of Garber's petition. It asserts that Garber did not effect proper service of his petition and that his petition fails to state cause of action.

■■■ In support of its demurrer, the Department asserts that the petition should be treated as an action in mandamus.[5] The petition itself does not specifically denote the legal theory under which it is brought. Garber argues in his brief that he has not filed an action in mandamus but, rather, a declaratory and injunctive action. An examination of the relief requested establishes the nature of the cause of action and, thus, the standards to be applied to a demurrer. *Kretchmar v. Commonwealth*, 831 A.2d 793, 797 (Pa. Cmwlth.2003).

■■■ A party seeking an injunction must establish that (1) the right to relief is clear, (2) there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and (3) the greater injury will result from refusing rather than granting the relief requested. *Singleton v. Lavan*, 834 A.2d 672 (Pa.Cmwlth.2003).

Similarly, mandamus is an extraordinary writ, designed to compel a public official's performance of a mandatory duty, and may issue only where (1) "the petitioner has a *clear legal right* to enforce the performance of an act, (2) the defendant has a corresponding duty to perform the act and (3) the petitioner has no other adequate and appropriate remedy." *Saunders v. Department of Corrections*, 749 A.2d 553 (Pa.Cmwlth.2000) (emphasis added). In short, whether Garber is seeking a writ of mandamus or an injunction, his threshold burden is to establish a clear legal right to relief. Because Garber seeks to compel action by prison officials acting in their official capacities, we accept the Department's premise that the petition seeks the issuance of a writ of mandamus.[6]

■■■ The Department asserts that Garber has failed to establish a clear, legal right to relief because he does not have a constitutional right to *contact* visitation with his minor children. Further, even if such a constitutional right exists, it can be restricted because the Department's interest for institutional order, security and overall safety of minor visitors and others outweighs Garber's interest in contact visitation with minors. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Because Garber cannot show a clear legal right to the relief requested, we agree with the Department that Garber

offender" and not a sexually violent predator. Brief at 14. He complains that prison officials have chosen to ignore this fact in their "exaggerated response" of denying contact visits with minors in retaliation for his refusal to continue the therapeutic program. This Court notes that Garber has failed to aver facts in the petition supporting these conclusory statements. The issue of retaliation is raised only in Garber's appellate brief and will not, therefore, be addressed by this Court.

5. Mandamus is an extraordinary remedy that compels the official performance of a ministerial act or a mandatory duty. *McGriff v. Pennsylvania Board of Probation and Parole*, 809 A.2d 455, 458 (Pa.Cmwlth.2002).

6. *See Commonwealth ex rel. Saltzburg v. Fulcomer*, 382 Pa.Super. 422, 555 A.2d 912, 914 (1989). The result, however, is the same even if the petition were to be treated as a suit in equity.

has failed to state a cause of action.[7]

Garber acknowledges that he is currently permitted non-contact visits with minor children, including his sister and the children of friends. Further, he has not set forth any allegations of discrimination or retaliation by the Respondents.[8] The question, then, is whether the Department is obligated to provide sex offenders contact visitation with minor children.

■ In *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3rd Cir.1979), petitioners argued that the prohibition of contact visits encroached upon a fundamental zone of privacy, the family relationship, and this encroachment was deserving of heightened constitutional scrutiny.[9] The Third Circuit concluded that, assuming a fundamental right is implicated by the prohibition of contact visits, the prohibition is permissible as a reasonable response to legitimate concerns of prison security. In *Inmates of Allegheny County Jail*, there was no indication in the record that the prohibition was adopted for purposes of punishment and, further, the inmates were not precluded from visiting with family members. Inmates were only precluded from physical contact with those visitors. Because the restriction was specifically tailored to meet perceived security

problems the Court held that the prison officials could prohibit contact visits. *Id.* at 759–760.

Garber contends that we should not follow the holding in *Inmates of Allegheny County Jail* but, rather, that in *Turner v. Safley*. In *Turner*, the United States Supreme Court held that a prison regulation impinging on an inmate's constitutional rights can be valid if it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. In so holding, the Supreme Court established four factors for deciding the constitutionality of a prison regulation restricting the exercise of a constitutional right that has survived incarceration. First, the regulation must have a "valid, rational connection" to a legitimate governmental interest. Second, the court must consider whether alternative means are available to inmates to exercise the asserted right. Third, the court must consider the impact on guards and inmates and prison resources in pursuing these alternative means. Finally, the Court must consider whether there are "ready alternatives" to the regulation. *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254.

Garber focuses his argument on the first and last *Turner* factors,[10] asserting that

7. In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Kretchmar v. Commonwealth*, 831 A.2d 793, 795 n. 1 (Pa.Cmwlth.2003).

8. *See, supra,* note 4.

9. While decisions of federal district courts and courts of appeals, including those of the Third Circuit, are not binding on Pennsylvania courts, even where a federal question is involved, they have persuasive value. It is

appropriate to follow them where the United States Supreme Court has not spoken. *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 772 n. 11 (Pa.Cmwlth. 1997).

10. Garber complains that the prison officials have failed to explain the rationale for the limitation and have failed to offer any "data demonstrating any connection between asserted goal [of rehabilitation of inmates] and stated regulation, but rather a presumption of continued guilt upon a targeted group of individuals and yet not all of that group." Brief at 13. Further, he contends that the regulation is an "exaggerated response to prison concerns," because all contact visits are held in the same room where sex offenders are in

the visitation limitation is irrational and an "exaggerated response to prison concerns" to which there are alternatives. Brief at 13. He fails, however, to establish the threshold issue of whether *contact* visitation with minors is a constitutional right. The *Turner* analysis applies only where a prison regulation burdens an inmate's fundamental right.

Recently, the United States Supreme Court further elaborated on the constitutionality of prison regulations impinging on inmate visits with family members in prison. In *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), prisoners and their prospective visitors challenged the constitutionality of prison regulations limiting the visitation rights of inmates classified as the highest security risks. Specifically, such inmates were permitted only non-contact visitation and could be visited by children only if accompanied by an adult.[11] The Court acknowledged that the Constitution protects certain types of personal relationships, including association among members of an immediate family, including grandchildren and grandparents.[12] However, the Court noted that the cases establishing these rights did not involve persons in prison. It reasoned that:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must

be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.

*Overton,* 539 U.S. at 131, 123 S.Ct. 2162 (citations omitted). Citing the *Turner* standards, the Supreme Court concluded:

> We need not ... determine the extent to which [the asserted right of association] survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests. This suffices to sustain the regulation in question. ... We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.

*Id.* at 132, 123 S.Ct. 2162.

Thus, the Supreme Court held in *Overton* that promoting internal security and protecting children were legitimate goals that justified limiting the visitation rights of high-security risk inmates. It further held that the burden is not upon the State to prove the constitutionality of a prison

---

close proximity to other inmates' visiting minor children; the prison is a minimum security facility; professionally trained security staff are present during contact visitation; he, personally, presents the "least of security concerns;" and "there has not been nor is there any record of problems with Sexual [sic] or general misconduct toward children in the visiting room setting." Brief at 13–14.

**11.** The Michigan Department of Corrections promulgated its regulations in response to increasing problems with the number of visitors to Michigan's prisons and the substance abuse problems among inmates. The com-

prehensive regulations limited the number of visitors, provided visits with family members, defined the level of relationship included in immediate family, and limited the visitation of children to family members if the child was accompanied by an adult defined in the regulation.

**12.** *See, e.g., Roberts v. United States Jaycees,* 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

regulation but, rather, upon the prisoner to prove its unconstitutionality.

▬ With these principles in mind, we turn to Garber's petition. A writ of mandamus is rarely issued and only where the Petitioner's right to relief is clear. Garber assumes, incorrectly under *Overton,* that it is the Department's burden to demonstrate the constitutionality the regulation restricting him to non-contact visitation with minor children. In actuality, it is Garber's burden to show that the regulation is unconstitutional, and he has failed to meet this burden. The Department's regulations limiting the visitation rights of sex offenders are rationally related to legitimate, and obvious, penological interests under *Overton* and *Turner.*

For the foregoing reasons, Respondents' preliminary objection in the nature of a demurrer is sustained, and the petition is dismissed.[13]

### ORDER

AND NOW, this 7th day of June, 2004, the petition for review in the above-captioned matter is hereby dismissed and the preliminary objection of the Pennsylvania Department of Corrections in the nature of a demurrer is sustained.

---

**13.** For this reason we need not consider the Department's preliminary objection to Garber's service of the petition.