IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Saunders,                 :
                                    : No. 524 M.D. 2015
                 Petitioner    : Submitted: April 8, 2016
                                      :
              v.                     :
                                      :
Commonwealth of Pennsylvania  :
Department of Corrections,       :
State Correctional Institution    :
at Rockview,                 :
                                      :
              Respondents  :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED: June 30, 2016


           Presently before the Court is the Department of Corrections' and the State Correctional Institution at Rockview's (SCI-Rockview) (collectively, Department) preliminary objection to the petition for review filed in this Court's original jurisdiction by Craig Saunders, an inmate at SCI-Rockview, seeking declaratory and injunctive relief. In his petition, Saunders seeks a declaration that the Department has no authority to compel him to participate in the Sexual Offender Treatment Program (SOTP)[1] and requests that the Department be

_____

[1] Section 9718.1(a) of the Sentencing Code provides that an inmate convicted of enumerated sexual crimes against minors, "including an offender designated as a 'sexually
**(Footnote continued on next page…)**

precluded from requiring him to participate in the SOTP or punishing him for failing to do so.[2] We sustain the preliminary objection and dismiss the petition for review with prejudice.

---

**(continued…)**

violent predator' as defined in section 9799.12 (relating to definitions), shall attend and participate in a [Department] program of counseling or therapy designed for incarcerated sex offenders . . . ." 42 Pa. C.S. §9718.1(a). Section 9718.1(b) provides that an inmate required to participate in such a program "shall not be eligible for parole unless" he or she has served the minimum term of imprisonment; participated in the program; and agreed to comply with any special parole conditions "imposed for therapy or counseling for sex offenders, including sexually violent predators." 42 Pa. C.S. §9718.1(b). Under Section 9718.1(c), the Department "shall develop and provide the program of counseling or therapy for offenders," and "shall have the sole discretion with respect to counseling or therapy program contents and administration, including the scheduling of an offender's attendance and participation." 42 Pa. C.S. §9718.1(c). Finally, Section 9718.1(d) states that "[n]otwithstanding any other provision of law to the contrary, this section shall not be construed to confer any legal right upon any individual, including an individual required to participate in the department's programs of counseling or therapy for incarcerated offenders, seeking to . . . participate and attend the program provided in subsection (a) at a time of the individual's own choosing [or] . . . file any other cause of action in any court regarding the program provided in subsection (a)." 42 Pa. C.S. §9718.1(d)(1), (4).

[2] Although Saunders has styled the instant matter as a declaratory and injunctive action, in its preliminary objections the Department asserts that he is actually seeking mandamus relief. In a similar case, we have explained:

> In support of its demurrer, the Department asserts that the petition should be treated as an action in mandamus. The petition itself does not specifically denote the legal theory under which it is brought. [The inmate] argues in his brief that he has not filed an action in mandamus but, rather, a declaratory and injunctive action. An examination of the relief requested establishes the nature of the cause of action and, thus, the standards to be applied to a demurrer.

> A party seeking an injunction must establish that (1) the right to relief is clear, (2) there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and (3) the greater injury will result from refusing rather than granting the relief requested. Similarly, mandamus is an extraordinary writ,

**(Footnote continued on next page…)**

Saunders was convicted in the Philadelphia County Court of Common Pleas (trial court) of 5 counts of robbery; 5 counts of kidnapping; burglary; violation of the Uniform Firearms Act; criminal conspiracy; and rape as an accomplice.[3]  In March 2004, the trial court sentenced Saunders to an aggregate

---

**(continued…)**

> designed to compel a public official's performance of a mandatory duty, and may issue only where (1) "the petitioner has a *clear legal right* to enforce the performance of an act, (2) the defendant has a corresponding duty to perform the act and (3) the petitioner has no other adequate and appropriate remedy."  In short, whether [the inmate] is seeking a writ of mandamus or an injunction, his threshold burden is to establish a clear legal right to relief. Because [the inmate] seeks to compel action by prison officials acting in their official capacities, we accept the Department's premise that the petition seeks the issuance of a writ of mandamus. [The result, however, is the same even if the petition were to be treated as a suit in equity].

*Garber v. Pennsylvania Department of Corrections*, 851 A.2d 222, 225 (Pa. Cmwlth. 2004) (citations and footnotes omitted and emphasis in original).

[3] The Pennsylvania Superior Court has described the facts underlying Saunders' convictions:

> The testimony at Saunders's trial established that he and co-defendant Selwyn Brown approached fifteen-year-old Latosha Thomas outside her home in Philadelphia, asking if her mother, Stephanie Miller, was at home.  When Latosha went to the front door to summon her mother, co-defendant Brown held a gun to the back of her head and forced her into the residence while Saunders, also brandishing a gun, checked the rooms of the home's first floor to see who was present.  As Brown corralled Latosha and Ms. Miller into a third-floor bedroom of the house, Saunders entered the second floor bedroom of fourteen-year-old Talieda Thomas, put a gun to her back, and forced her up the stairs as well.  As the two mounted the stairs, they encountered Ms. Miller's youngest daughter, eight-year-old Shannon Miller, running to escape the

**(Footnote continued on next page…)**

(continued…)

scene upstairs. Saunders seized Shannon as well and forced her, along with Talieda, into the same third-floor bedroom where Brown had confined their mother and older sister. Shortly thereafter, Latosha's boyfriend, Shampsuddin Hassan, arrived at the Miller home, and Brown, answering the door with Latosha at gunpoint, forced him into the house and confined him with Ms. Miller and her daughters.

While Brown held Ms. Miller, her daughters and Hassan at gunpoint, Saunders ransacked the house looking for something to no avail. Ultimately, Brown demanded $20,000 of Ms. Miller and, when she could not produce it, forced her at gunpoint into a second bedroom, leaving Saunders to guard the children. While in the other room with Ms. Miller, Brown forced her to remove her clothing and then, still holding his gun, raped her. After Brown returned her to the bedroom with her children, battered and shaken, Ms. Miller asked if he was looking for Andre Woodard, her former paramour. Miller then offered to show the two where Woodard lived. After summoning a third co-conspirator, Harlan Smith, by telephone and leaving him to guard the children, Brown took Miller to her car and, with Saunders following, went to Woodard's home. Continuing to hold Ms. Miller at gunpoint as the two walked toward Woodard's house, Brown committed a second home invasion as he forced his way past Quiana Scott, who answered the door. While a second gunman held Ms. Miller, Brown forced Scott into a back room from which he returned with a small tin and ordered Ms. Miller to drive him back to her home. After being released and reunited with her children, Ms. Miller and her family went to a hotel for the night. The following day, Ms. Miller submitted to a rape kit which recovered semen, DNA from which matched that of Selwyn Brown. Over the ensuing weeks, the Philadelphia Police Department worked with Ms. Miller, Latosha, and Talieda, developing composite sketches of Saunders and Smith. In addition, Ms. Miller and Talieda selected Brown's image from a photo array and police arrested him on a warrant. Subsequent review of the visitation logs at SCI-Graterford, where Brown was held pending trial, revealed that Saunders visited him there five times in six weeks. Ultimately, Ms. Miller and Latosha

(Footnote continued on next page…)

term of 48½ to 97 years imprisonment.[4]  The Superior Court affirmed the judgment of sentence on direct appeal and Saunders did not seek further review by the Supreme Court.  *Commonwealth v. Saunders*, (Pa. Super., No. 1301 EDA 2010, filed August 9, 2011), slip op. at 5; *Commonwealth v. Saunders*, 946 A.2d 776, 778 n.2 (Pa. Super. 2008).[5]

---

**(continued…)**

> saw Saunders in a west Philadelphia shoe store and identified him
> to a nearby police officer who took him into custody on a warrant.

*Commonwealth v. Saunders*, (Pa. Super., No. 1301 EDA 2010, filed August 9, 2011), slip op. at 2-4.  With respect to Saunders' rape conviction, the Pennsylvania Supreme Court has explained that "[i]t is well-established . . . that a defendant, who was not a principal actor in committing the crime, may nevertheless be liable for the crime if he was an accomplice of a principal actor.  *See* 18 Pa .C.S. §306; *see also Commonwealth v. Bradley*, [392 A.2d 688, 690 (Pa. 1978), *cert. denied*, 440 U.S. 938 (1979)] (the actor and his accomplice share equal responsibility for commission of a criminal act)."  *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004).

[4] Following a separate trial, the trial court sentenced Saunders to a consecutive 3½- to 7-year term based on his conviction of conspiracy to commit escape for his participation in a plan to assist Brown in an armed escape from custody.  *See Commonwealth v. Saunders*, 946 A.2d 776, 779 (Pa. Super. 2008) ("During the visits to the prison and the numerous phone calls, Brown and [Saunders] crafted the plan to free Brown from custody at gunpoint while he was leaving Family Court on the day of Brown's preliminary hearing in the [rape] case.") (footnote omitted).

[5] Saunders has filed multiple lawsuits in both state and federal courts collaterally attacking his convictions.  *See, e.g., Commonwealth v. Saunders*, (Pa. Super., No. 418 EDA 2014, filed August 5, 2015); *Saunders v. Philadelphia District Attorney's Office*, (3rd Cir., No. 13-1951, filed October 21, 2013); *Saunders v. Bright*, (3rd Cir., No. 08-1763, filed June 3, 2008); *Saunders v. Lamas*, (E.D. Pa., No. 12-1731, filed December 23, 2015); *Saunders v. Beard*, (E.D. Pa., No. 05-CV-2740, filed October 26, 2005).

In October 2015, Saunders filed the instant petition alleging that a Department counselor added the SOTP to his prescribed programming[6] in March

---

[6] Section 102 of the Prisons and Parole Code defines "prescribed programming" as "[a]n individualized treatment plan [(ITP)] that is part of the correctional plan jointly developed by the department and the board [of probation and parole] following a diagnostic evaluation and risk and needs assessment that includes a structured set of evidence-based treatment curriculums designed to reduce the risk of re-offense by an offender." 61 Pa. C.S. §102. In this regard, we may take judicial notice of the Department's Policies and assessment tools pursuant to Pa. R.E. 201 because "a court may take judicial notice of public documents in ruling on a preliminary objection in the nature of a demurrer." *Solomon v. United States Healthcare Systems of Pennsylvania, Inc.*, 797 A.2d 346, 352 (Pa. Super.), *appeal denied*, 808 A.2d 573 (Pa. 2002) (citation omitted). *See also Hill v. Department of Corrections*, 64 A.3d 1159, 1165 (Pa. Cmwlth. 2013) (taking judicial notice of the Department's policies and handbooks found on its website).

Section 11 of the Department's Access to Mental Health Care Procedures Manual states, in relevant part:

> a. Permanent facilities are responsible for identifying, tracking, and assessing all sexual offenders received. All facilities shall use the automated Unit Management System for recommending [SOTP] and maintaining waiting lists. A trained [SOTP] provider shall conduct specialized assessments of a sexual offender within two months of his/her arrival at the facility, and, subsequent to the assessment, ensure the appropriate program is placed on the offender's Individual Treatment Plan (ITP).

Department Policy 13.8.1, Section 11(B)(2)(a).

With respect to the assessment protocol that the Department uses in determining inmate participation in the SOTP, Section 11 also provides, in pertinent part:

> b. For every male sexual offender, assessment shall include, but not be limited to, a case file review, and completion of the *Static-99*[.] Unless the convicted sexual offender refuses, an individual interview shall also be part of the assessment process, and during the interview the **DC-577, Adult Sex Offender Data Collection Instrument** . . . shall be completed. Note: Much of the information required for completion of the **DC-577** can be

**(Footnote continued on next page…)**

(continued...)

gleaned through the case file review, but can be verified and/or clarified in the individual interview.

c.　Every inmate refusal to be interviewed for purposes of risk assessment shall be documented using the **Inmate Cumulative Adjustment Record (ICAR)**, and this documentation shall be sent to the inmate's Corrections Counselor for maintenance in the **ICAR**, with a copy maintained in the offender's sex offender-specific record.　Upon refusal, the inmate shall be counseled as to the possible consequences of failure to participate in treatment, including the possibility of being denied parole and of increasing his/her chances of re-offending upon return to the community.　In cases where the inmate is appealing his/her case based upon claim of innocence and/or is in total denial of the crimes(s) and refusing treatment, this shall also be documented using the **ICAR**.

* * *

h.　The results of the sex offender assessment shall be summarized using the **DC-578, Sex Offender Program Evaluation** form, which provides two levels of risk (Low, Moderate/High).　A male offender assessed to be low risk shall be prescribed Low Intensity SOTP, while an offender assessed to be moderate or high risk shall be prescribed Moderate/High Intensity SOTP.　Assessment results (including copies of the completed *Static-99*, **DC-577** and the **DC-578**, along with copies of the inmate's Pre-Sentence Investigation (PSI), and any existing police reports and/or victim statements shall be the beginning of the sex offender-specific record.

Department Policy 13.8.1, Section 11(B)(4)(b), (c), (h) (emphasis in original).

In turn, the STATIC-99 was developed by R. Karl Hanson, Ph.D., and David Thornton, Ph.D., "by amalgamating two risk assessment instruments."　Andrew Harris, Amy Phenix, R. Karl Hanson, and David Thornton, *STATIC-99 Coding Rules Revised – 2003* at 3.　As described:

The STATIC-99 utilizes only static (unchangeable) factors that have been seen in the literature to correlate with sexual reconviction in adult males.　The estimates of sexual violent recidivism produced by the STATIC-99 can be thought of as a

**(Footnote continued on next page…)**

2010, but that he never consented to or underwent a diagnostic evaluation or assessment for that placement and that he was not designated as a "sexually violent predator"[7] by the trial court at sentencing. Saunders asserts that he refused to

---

**(continued…)**

> baseline of risk for violent and sexual reconviction. From this baseline of long-term risk assessment, treatment and supervision strategies can be put in place to reduce the risk of sexual recidivism.
>
> * * *
>
> The strengths of the STATIC-99 are that it uses risk factors that have been empirically shown to be associated with sexual recidivism and the STATIC-99 gives explicit rules for combining these factors into a total risk score. This instrument provides explicit probability estimates of sexual reconviction, is easily scored, and has been shown to be robustly predictive across several settings using a variety of samples.
>
> While potentially useful, an interview with the offender is not necessary to score the STATIC-99.

*Id.*

Finally, the STATIC-99 divides sexual misconduct into two categories. "Category 'A' involves most criminal charges that we generally consider 'sexual offences' and that involve an identifiable child or non-consenting adult victim. This category includes all contact offences, exhibitionism, voyeurism, sex with animals and dead bodies. Category 'B' offences include sexual behavior that is illegal but the parties are consenting or no specific victim is involved." *Id.* at 14. Specifically listed as one of the Category A offenses in the STATIC-99 is Saunders' conviction for rape as an accomplice: "Rape (includes in concert) (Rape in concert is rape with one or more co-offenders. The co-offender can actually perpetrate a sex crime or be involved to hold the victim down)." *Id.* at 15.

[7] The Act of October 24, 1995, P.L. 1079, now known as Megan's Law I, required designated sexual offenders to register with the Pennsylvania State Police (PSP) and mandated the release of certain information to the public. Megan's Law II was enacted in May 2000, after Megan's Law I was held to be unconstitutional in *Commonwealth v. Williams*, 733 A.2d 593 (Pa.
**(Footnote continued on next page…)**

participate in the SOTP until January 2015, at which time he told his counselor that he would participate once all avenues for seeking relief from his convictions were exhausted. Saunders states that the Department referred him to Department Policy 13.8.1, the Access to Mental Health Care Procedures Manual, in response to his

---

**(continued…)**

1999), *cert. denied*, 528 U.S. 1077 (2000). Some portions of Megan's Law II were held to be unconstitutional in *Commonwealth v. Gomer Williams*, 832 A.2d 962 (Pa. 2003), and the General Assembly enacted Megan's Law III in November 2004. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article 3, Section 3 of the Pennsylvania Constitution. *Commonwealth v. Neiman*, 84 A.3d 603, 616 (Pa. 2013).

The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§16901-16945, and the Pennsylvania General Assembly enacted the Sexual Offender Registration and Notification Act (SORNA) with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. §9799.10(1). SORNA went into effect in December 2012, and established a three-tier classification system for sexual offenders. Section 9799.14 of SORNA, 42 Pa. C.S. §9799.14. Section 9799.14(d)(2) of SORNA designates Saunders' rape conviction as a Tier III sexual offense for registration and reporting purposes and requires registration as a sexual offender for life. 42 Pa. C.S. §§9799.14(d)(2), 9799.15(a)(3).

Finally, Section 9799.12 of SORNA defines "sexually violent predator," in relevant part, as "an individual convicted of an offense specified in . . . section 9799.14(d)[(2)] . . . who, on or after the effective date of this subchapter, is determined to be a sexually violent predator under section 9799.24 (relating to assessments due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses)." 42 Pa. C.S. §9799.12. Although the trial court did not order the assessment by the State Sexual Offenders Assessment Board (SOAB) of whether or not Saunders is a sexually violent predator prior to sentencing, and there is no claim in this matter relating to SORNA's reporting requirements, Section 9799.24(g) states that "[t]he Pennsylvania Board of Probation and Parole may request of the [SOAB] that an assessment of a sexual offender be conducted and that a report be provided to the Pennsylvania Board of Probation and Parole prior to considering a sexual offender for parole." 42 Pa. C.S. §9799.24(g).

request under the Right-to-Know Law[8] for copies of any policy, legal authority, or other documents containing the nature of the SOTP and its expected remedial outcomes, and explaining its application to inmates who did not commit one of the enumerated offenses in Section 9718.1(a) of the Sentencing Code warranting the designation.

Saunders alleges that he submitted a grievance to the Facility Grievance Coordinator in which he asserted: his right to inquire to the nature of the SOTP in order to consent to psychological treatment; Section 9718.1(a) of the Sentencing Code does not apply to inmates convicted of rape as an accomplice; and he should not continue to be penalized for failing to participate in the SOTP if he agreed to do so once all of his avenues for relief in the courts are exhausted. The grievance was appealed through all levels of institutional review. Ultimately, the Secretary's Office of Inmate Grievances and Appeals issued a Final Appeal Decision that stated, in relevant part:

> A review of the record was conducted by the Bureau of Treatment Services who determined that the current recommendation for [the SOTP] is appropriate based on [Department] assessments that were triggered by your current conviction for rape. This program is just a recommendation for you and you have every right to refuse programming. This programming does not dictate being designated as a Sexually Violent Predator as you suggest. While you may be appealing your case to get the sex offenses removed, if that does happen the [Department] would re-evaluate your need to participate in any standardized programs based on any sentence status changes.

---

[8] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

Petition for Review Attachment F.[9]

Saunders then filed the instant petition for review in our original jurisdiction and the Department filed its preliminary objection in the nature of a demurrer.[10] Saunders argues[11] that the Department's requirement that he divulge information regarding his rape conviction and admit guilt violates his right against self-incrimination and his reputation rights as guaranteed by the Fifth Amendment to the United States Constitution[12] and Article 1, Sections 1[13] and 9 of the

---

[9] "[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also documents or exhibits attached to it." *Lawrence v. Department of Corrections*, 941 A.2d 70, 71 (Pa. Cmwlth. 2007).

[10] The Department asserts that Saunders fails to state a cognizable claim for relief because he "lacks a clear right to force the Department to remove a programming recommendation" and he "lacks a clear legal right to overturn" the Department's recommendation for the SOTP because "the Department's treatment services officials believe that it would be salutary for [him] to participate in the rehabilitative program." Preliminary Objection at ¶¶20, 21. "In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Garber*, 851 A.2d at 226 n.7 (citation omitted).

[11] We reorder Saunders' claims in the interest of clarity.

[12] The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As this Court has explained:

> It is indisputable that the Fifth Amendment privilege against self-incrimination is applicable to the States via the Fourteenth Amendment, and that it applies to protect an individual not only from being compelled to testify against himself in a criminal prosecution, but also privileges him not to answer official questions in any proceeding, criminal or civil, where the answer might incriminate him in future criminal proceedings. *Leftkowitz v. Turley*, 414 U.S. 70, 77 [(1973)].

**(Footnote continued on next page…)**

11

Pennsylvania Constitution.[14] Petition for Review at ¶¶44-46. Saunders also argues that the Department's requirement that he participate in the SOTP violates his due process rights under the Fourteenth Amendment to the United States Constitution[15] and Article 1, Section 1 of the Pennsylvania Constitution because: (1) it was imposed without prior notice or an adequate hearing; (2) it deprives him of a liberty interest by changing the conditions of his confinement and denigrating his reputation; and (3) it "impos[es] an 'atypical and significant hardship on [him] in

---

**(continued…)**

*City of Philadelphia v. Kenny*, 369 A.2d 1343, 1347 (Pa. Cmwlth.), *cert. denied*, 434 U.S. 923 (1977).

[13] Article 1, Section 1 states:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, §1. "The requirements of Article I, Section 1 of the Pennsylvania Constitution are not distinguishable from those of the 14th Amendment . . . [and courts] may apply the same analysis to both claims." *Pennsylvania Game Commission v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995) (citation omitted).

[14] Article 1, Section 9 states, in pertinent part, that "[i]n all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land." Pa. Const. art. I, §9.

[15] Section 1 of the Fourteenth Amendment provides, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, §1.

relation to the ordinary incidents of prison life[.]'" Petition for Review at ¶¶ 42, 43.[16]

In *Wilson v. Pennsylvania Board of Probation and Parole*, 942 A.2d 270 (Pa. Cmwlth. 2008), an inmate filed a petition for mandamus relief in this Court against the Pennsylvania Board of Probation and Parole (Board) because he was denied boot camp and parole based upon a Department evaluation that required him to complete the SOTP. The inmate was serving a sentence due to a guilty plea to delivery of a controlled substance, but a related corruption of minors charge had been withdrawn.[17] The inmate alleged that because he had not been tried for nor convicted of the corruption of minors charge, his required participation in the SOTP compelled him to admit to a crime for which he was not convicted in violation of his right against self-incrimination and his due process rights. The Board and the Department both filed preliminary objections in the nature of a demurrer.

In rejecting the inmate's self-incrimination claim, we explained:

> The Fifth Amendment right against self-incrimination, which prohibits the government from compelling a person to give self-incriminating testimony in a criminal case, "does not terminate at the jailhouse door. But the fact of a valid conviction and the ensuing

---

[16] Saunders specifically alleges atypical and significant hardship "including [the] loss of [the] right to receive non-contact visits, the possibility of being placed in disciplinary custody for [90] days, ineligibility for parole, and assignment of a 'high risk' custody level, which mandates that [he] change cells every 90 days." Petition for Review at ¶34.

[17] As this Court noted, "Although Wilson was not convicted of a sex offense (charges of corruption of a minor were withdrawn), prison staff explained to Wilson that he was recommended for sex offender treatment because the 'official version' of his crime indicated that at the time of his arrest he was found naked, wearing a condom, and trying to initiate a sexual relationship with a 13-year-old girl." *Wilson*, 942 A.2d at 273 n.3.

restrictions on liberty are essential to the Fifth Amendment analysis." *McKune v. Lile*, 536 U.S. 24, 36 [(2002)]. In determining whether the Kansas Department of Corrections' sexual abuse treatment program violated a convicted sex offender's constitutional privilege against self-incrimination, the United States Supreme Court concluded that a prison rehabilitation program that bears a rational relation to a legitimate penological objective does not violate the privilege against self-incrimination if the adverse consequences for not participating are related to the program's objectives and do not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.* at 37–38[.]

Applying these factors to the present facts, we must conclude that Wilson fails to state claim. The institutional [SOTP] furthers a legitimate penological objective of rehabilitating those who have been convicted of a sex offense and those whose crimes include a sexual component.[18] The adverse consequences identified by Wilson, *i.e.*, denial of parole and advancement to boot camp, do not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *McKune*; *Weaver v. Pa. Bd. of Prob. and Parole*, 688 A.2d 766 (Pa. Cmwlth. 1997). Wilson's choice to remain silent "is marked less by compulsion than by choices the Court has held give no rise to a self-incrimination claim." *McKune*, 536 U.S. at 41[.] "[T]he government need not make the exercise of the Fifth Amendment privilege cost free." *Id.*

---

[18] *See also* Section 91.2 of the Department's regulations, 37 Pa. Code §91.2 ("It is the goal of the Department to operate its institutions and programs to provide protection to the community, a safe and humane environment and opportunities for rehabilitation for the inmates."); Department Policy 7.2.1, Section 4(a)(1) ("Correctional planning begins at the point of entry into the Department. The majority of inmates will eventually return to the community; therefore, the initial Correctional Plan and subsequent plans will focus on the inmate's reintegration into the community as a law-abiding citizen. . . . The overall mission of every program is to enhance public safety by providing an inmate the opportunity to become a law-abiding citizen through structured educational, vocational, and therapeutic experiences.").

14

*Wilson*, 942 A.2d at 273 (footnote omitted).[19]

> In rejecting the inmate's due process claim, we explained:

> > Wilson's claim that respondents are violating his due process rights by considering information concerning the charge of corruption of minors, *a crime for which he was not tried and convicted*, fails for the same reasons. An inmate has no liberty interest in being paroled, *Weaver*, in not being labeled a sex offender, or in not being required to participate in sex offender programming, *Folk v.* [*Attorney General of the Commonwealth of Pennsylvania*], 425 F.Supp. 2d 663 (W.D. Pa. 2005). Moreover, requiring an inmate to complete institutional programming that requires the inmate to admit guilt is not conscience shocking nor intended to injure the inmate in a way that is unjustified by a legitimate government interest. *Id.*

*Wilson*, 942 A.2d at 273-74 (emphasis added). Accordingly, we sustained the Board's and Department's preliminary objections and dismissed the inmate's petition. *Id.* at 274.

Likewise, in the instant case, Saunders has failed to state cognizable constitutional claims in his petition for review. As outlined above, a "sexually violent predator" designation under Section 9799.12 of the Sentencing Code or a

---

[19] *See also Weaver*, 688 A.2d at 778-79 ("Just as Weaver is free to exercise his First Amendment right not to participate in the treatment program at all, he is also free to assert his Fifth Amendment right against self-incrimination and refuse to admit to committing the rape for which he was convicted in the context of completing a treatment program. He is not, however, immunized from all adverse consequences, if any, arising from that refusal, such as here, not being permitted to participate in a program that considers an admission to be a pre-condition to successful treatment that will lessen the chances that he will rape again Because there is no constitutional prohibition against using Weaver's refusal to admit that he committed the rape for which he was convicted as a basis for denying participation in a treatment program, and because a failure to successfully complete that program is a valid reason for denying parole, Weaver has failed to set forth a cause of action in mandamus.").

15

conviction for one of the enumerated offenses in Section 9718.1 is not a precondition to the Department's assessment of whether an inmate needs to participate in the SOTP as part of the inmate's ITP.[20] Additionally, the assessment

<hr>

[20] A plurality of the United States Supreme Court has explained:

> Sex offenders are a serious threat in this Nation. . . . When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. States thus have a vital interest in rehabilitating convicted sex offenders. Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism.

*McKune*, 536 U.S. at 32-33 (citations omitted). Furthermore, "courts must exercise restraint in supervising the minutiae of prison life" because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Id.* at 37 (citation omitted). As a result, "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). *See also Meggett v. Department of Corrections*, 892 A.2d 872, 883 (Pa. Cmwlth. 2006) ("[C]ourts should defer to the administrative expertise of prison administrators because prison officials are in a better position than judges ever can be to grasp what is required in the 'prison domain' and because the operation of prison facilities is 'peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.'") (citation omitted); *Dial v. Vaughn*, 733 A.2d 1, 4 (Pa. Cmwlth. 1999) ("The institution in which the sentence is to be served, the objects sought to be accomplished during this period of control and all the other penological considerations are not primarily judicial functions.") (citation omitted).

   The Secretary's authority to direct Department operations is established by Sections 201, 206, and 506 of the Administrative Code of 1929 (Administrative Code), P.L. 177, 71 P.S. §§61, 66, 186. *See also* Section 901-B of the Administrative Code, added by the Act of December 30, 1984, P.L. 1299, 71 P.S. §310-1 (transferring to the Department all powers and duties possessed by the former Bureau of Corrections "related to the administration, management and supervision of penal and correctional facilities, programs and services."). To this end, as outlined above, Department Policy 13.8.1, Section 11(B)(2)(a), requires a trained SOTP provider to conduct specialized assessments of every sexual offender within two months of his arrival at a
**(Footnote continued on next page…)**

16

protocol that the Department uses in determining inmate participation in the SOTP does not require an inmate's participation in determining whether or not the SOTP is an appropriate rehabilitative tool for those inmates convicted of a sex offense such as Saunders. Although Saunders is not required to participate in the SOTP,

---

**(continued…)**

Department facility and, subsequent to the assessments, to ensure that the appropriate program is placed on the offender's ITP. Additionally, Section 11(7)(C)(1)(a) provides for "[a] program of sex offender-specific treatment . . . to every inmate convicted of a sexual offense . . . ." These provisions are consistent with the Department's regulation, promulgated pursuant to its authority under Section 506 of the Administrative Code, "to operate its institutions and programs to provide protection to the community, a safe and humane environment and opportunities for rehabilitation for the inmates." 37 Pa. Code §91.2. *See also* Department Policy 7.2.1, Section 4(a)(1) ("The majority of inmates will eventually return to the community; therefore, the initial Correctional Plan and subsequent plans will focus on the inmate's reintegration into the community as a law-abiding citizen. . . . The overall mission of every program is to enhance public safety by providing an inmate the opportunity to become a law-abiding citizen through structured educational, vocational, and therapeutic experiences.").

As explained above, this Court has specifically held that "[t]he institutional sex offender treatment program furthers a legitimate penological objective of rehabilitating those who have been convicted of a sex offense and those whose crimes include a sexual component," and that the Department can properly determine that the SOTP is an appropriate rehabilitative program for an inmate even though he has not been convicted of one of the enumerated offenses in Section 9718.1 of the Sentencing Code and has not been designated as a "sexually violent predator" under Section 9799.12. *Wilson*, 942 A.2d at 273 (footnote omitted). *See also Carter v. Muller*, 45 F.Supp. 2d 453, 457 (E.D. Pa. 1999) (holding that the Board's denial of parole due to an inmate's refusal to participate in the SOTP was not unconstitutionally arbitrary even though the inmate had completed serving the sentence on his rape conviction years earlier). Moreover, as noted above, Saunders' rape conviction as an accomplice is specifically listed as one of the Category A offenses in the STATIC-99 protocol that the Department uses in determining whether the SOTP is an appropriate rehabilitative tool. As a result, and contrary to Saunders' assertion, the Department's determination regarding the propriety of the SOTP for an inmate is not solely limited to those convicted of the offenses enumerated in Section 9718.1 of the Sentencing Code or those designated as a "sexually violent predator" under Section 9799.12, but for any sexual offender housed in a Department facility for which the Department deems it appropriate.

17

the fact that adverse consequences may flow from his non-participation does not implicate constitutional due process concerns. *See McKune*; *Wilson*.[21]

Moreover, it is undisputed that Saunders has completed direct review of his convictions so his self-incrimination rights are not implicated by the SOTP's requirements and the speculative consequences of his non-participation are not an atypical and significant hardship to the normal incidents of his prison life. *See Commonwealth v. Melvin*, 103 A.3d 1, 51 (Pa. Super. 2014) ("We are aware of no federal or Pennsylvania state law . . . that supports the notion that the right against self-incrimination extends beyond the pendency of a direct appeal."); *Wilson*, 942 A.2d at 273 ("The adverse consequences identified by Wilson, *i.e.*, denial of parole and advancement to boot camp, do not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.") (citation omitted); *Garber*, 851 A.2d at 228 ("The Department's regulations limiting the visitation rights of sex offenders are rationally related to legitimate, and obvious, penological

---

[21] In order for the requirements of procedural and substantive due process to apply, there must be a deprivation of a property or liberty interest protected by the Fourteenth Amendment. *Davenport v. Reed*, 785 A.2d 1058, 1062 (Pa. Cmwlth. 2001). In this regard, Saunders' reliance on *Renchenski v. Williams*, 622 F.3d 315, 326 (3rd Cir. 2010) is misplaced because the court therein held "that only after a prisoner has been afforded due process may sex offender conditions be imposed on an inmate *who has not been convicted of a sexual offense*." (Emphasis added). Saunders' rape conviction distinguishes the Department's prescribed programming in the instant matter from that in *Davenport*. *See also Commonwealth v. Wallace*, 97 A.3d 310, 320-22 (Pa. 2014) (holding that during incarceration an inmate did not have a due process right to expunction of fingerprints, photographs, and arrest records not resulting in convictions because the risk of the erroneous deprivation of his private interest in his reputation is slim; he had a vast criminal history including convictions that would not be expunged from his criminal history and the expunction of the other charges would not erase the stigma that follows a convicted felon; and the Commonwealth had a compelling interest in retaining the records because they could be used in further penalization should he commit another offense in prison or for use by the Board in future parole decisions).

18

concerns . . . .") (citations omitted).[22]   As a result, Saunders has failed to allege claims for which the requested relief may be granted.

Accordingly, the Department's preliminary objection is sustained and Saunders' petition for review is dismissed with prejudice.

_____
MICHAEL H. WOJCIK, Judge

---

[22] *See also Commonwealth v. Shrawder*, 940 A.2d 436, 443 (Pa. Super. 2007) ("[A] therapeutic polygraph is a proper element in a sex offender treatment program for a convicted sexual offender and does not violate a probationer's rights under the Fifth Amendment to the United States Constitution or under Article One, Section Nine of the Pennsylvania Constitution, so long as the inquiries made pursuant to it relate to the underlying offense for which an offender has been sentenced and do not compel him or her to provide information that could be used against him or her in a subsequent criminal trial.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Saunders,           :
                              : No. 524 M.D. 2015
              Petitioner     :
                              :
           v.              :
                              :
Commonwealth of Pennsylvania  :
Department of Corrections,      :
State Correctional Institution   :
at Rockview,               :
                              :
           Respondents  :

# **O R D E R**


AND NOW, this 30th day of June, 2016, the preliminary objection of the Commonwealth of Pennsylvania, Department of Corrections and the State Correctional Institution at Rockview is SUSTAINED and Craig Saunders' petition for review is DISMISSED with prejudice.


_____
MICHAEL H. WOJCIK, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Saunders,                          :
                              Petitioner  :
                                         :
        v.                               :  No. 524 M.D. 2015
                                         :  Submitted:  April 8, 2016
Commonwealth of Pennsylvania             :
Department of Corrections,               :
State Correctional Institution           :
at Rockview,                             :
                            Respondents: :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
         HONORABLE MICHAEL H. WOJCIK, Judge
         HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

**CONCURRING OPINION**
**BY JUDGE BROBSON**                      **FILED:  June 30, 2016**

I concur with the majority's decision to sustain the Department's preliminary objections and dismiss Saunders' petition for review with prejudice.  I write separately, however, because I do not believe that the majority opinion completely addresses Saunders' statutory construction argument.

In addition to his constitutional arguments, Saunders also argues that the Department had no authority to require him to participate in the sex offender treatment program because the General Assembly did not intend for Section 9718.1 of the Judicial Code, 42 Pa. C.S. § 9718.1, to apply to an offender convicted of accomplice to rape of an adult woman.  Section 9718.1 provides that an offender convicted of certain sexual crimes against minors shall not be eligible for parole unless he attends and participates in a designated treatment program.

While it is true that Saunders has not been convicted of any of the offenses enumerated in Section 9718.1, there is no evidence that the Department has applied Section 9718.1 to Saunders; the Department has not required Saunders to participate in the sex offender treatment program *pursuant to* Section 9718.1, nor has Saunders been determined to be ineligible for parole based upon his refusal to participate in the sex offender treatment program. Rather, it appears that the Department has made a recommendation that Saunders participate in the sex offender treatment program pursuant to its general authority under Section 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added by the Act of December 30, 1984, P.L. 1299, 71 P.S. § 310-1 ("The Department of Corrections . . . shall have the powers and duties . . . related to the administration, management and supervision of penal and correctional facilities, programs and services."). As a result, Saunders has failed to set forth a claim for relief based on statutory construction at this time.

For these additional reasons, I agree with the majority's result in this matter.

_____
P. KEVIN BROBSON, Judge